UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X     Docket No.: 22-cv-05212(JPC)(JW)
ROBERT W. GORDON,

                                    Plaintiff,

                    -against-

WILSON ELSER MOSKOWITZ EDELMAN &
DICKER LLP, RORY L. LUBIN, STUART MILLER,
and JOHN and JANE DOE (said names being
fictitious, the persons intended being those who aided
and abetted the unlawful conduct of the named
Defendants),

                                    Defendants.
-------------------------------------------------------------X

# PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND DISMISS THE COMPLAINT

MADUEGBUNA COOPER LLP
30 Wall Street, 8th Floor
New York, NY 10005
(232) 232-0155
Attorneys for Plaintiff

**On the Brief:**
Samuel O. Maduegbuna, Esq.
William W. Cowles, Esq.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................iii-vii

PRELIMINARY STATEMENT...............................................................................1

STATEMENT OF FACTS .......................................................................................2

LEGAL STANDARD ..............................................................................................3

ARGUMENT ...........................................................................................................3

I.      Defendants Should Waive Arbitration and Proceed in Court ..................................3

II.     The Court Must Decide If the Arbitration Agreement is Unconscionable..............3

      1.   Defendants Waived Any Argument that the Arbitrator Must
          Decide the Threshold Issue of Arbitrability Instead of the Court ....................4

      2.   The Agreement Lacks Clear and Unmistakable Intent to show that
          the Parties Delegated the question of Arbitrability to an Arbitrator .................4

      3.   The Court Must Decide Issues of Equitable Estoppel .......................................9

      4.   The Court Must Decide Issues of Effective Vindication Because Gordon
          Cannot Vindicate his Rights in Arbitration Due to Prohibitive Costs ............10

III.    Arbitration cannot be Compelled Because the Agreement is Unconscionable
       and Against Public Policy ...................................................................................12

      1.   Legal Standard on Unconscionable and Void Arbitration Agreements............12

      2.   Arbitration Cannot be Compelled because the Agreement is
          Unconscionable and Against Public Policy ....................................................12

      3.   The Offending Terms are not Severable, were Designed to
          Purposively Deceive Wilson Elser Employees and are a Shocking
          Affront to Public Policy ..................................................................................15

      4.   The Agreement is Void under CPLR 7515 and New York Law
          Does Not Permit Severing the Unconscionable Terms....................................17

IV.    On the merits, Defendants' Motion to Dismiss should be Denied........................19

      1.   Legal Standard ................................................................................................19

2.   Gordon's FMLA Claim is Sufficiently Pled ........................................19

3.   Gordon's Claims are Timely ...............................................................21

V.   Gordon Falls within the Jurisdiction of the NYCHRL Given that the
Majority of his Cases were in New York City ........................................23

VI.   Gordon Should be Granted Leave to Amend the Complaint Should the
Court Rule on Defendants' Motion to Dismiss under Rule 12(b)(6)....................24

CONCLUSION .............................................................................................................24

# TABLE OF AUTHORITIES

**Cases**

*Adams v. Kent Sec. Inc.*,
   68 N.Y.S.3d 58 (1st Dept. 2017) ................................................................ 15

*AFLAC v. Baker*,
   848 F. App'x 11 (2d Cir. 2021) ................................................................ 16

*Albany Sav. Bank, FSB v. Halpin*,
   117 F.3d 669 (2d Cir. 1997) ................................................................... 7

*Alexander v. Gardner-Denver Co.*,
   415 U.S. 36 (1974) ............................................................................... 12

*Allaire Corp. v. Okumus*,
   433 F.3d 248 (2d Cir. 2006) .................................................................. 19

*Am. Exp. Co. v. Italian Colors Rest.*,
   570 U.S. 228 (2013) .............................................................................. 10

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .............................................................................. 19

*Bell Atlantic Corp. v. Twombly*,
   127 S.Ct. 1955 (2007) ........................................................................... 19

*Ben-Levy v. Bloomberg L.P.*,
   2012 WL 2477685 (S.D.N.Y. June 26, 2012) ........................................ 22

*Brady v. Williams Capital Group, L.P.*,
   878 N.Y.S.2d 693 (1st Dept. 2009), *aff'd as modified*, 928 N.E.2d 383 (N.Y. 2010) .............. 11

*Brower v. Gateway 2000, Inc.*,
   676 N.Y.S.2d 569 (1st Dept. 1998) .................................... 12,13,14,16,18

*Chambers v. Time Warner, Inc.*,
   282 F.3d 147 (2d Cir. 2002) .................................................................... 3

*Charter Commc'ns, Inc. v. Garfin*,
   2021 WL 694549 (S.D.N.Y. Feb. 23, 2021) .......................................... 18

*Chau v. Donovan*,
   357 F. Supp. 3d 276 (S.D.N.Y. 2019) ................................................... 24

iii

*Christian v. Christian*,
   365 N.E.2d 849 (N.Y. 1977) ...................................................................... 15

*Contec Corp. v. Remote Sol. Co.*,
   398 F.3d 205 (2d Cir. 2005) .................................................................... 4,6

*Craig v. U. of Connecticut Health Ctr.*,
   2016 WL 4536440 (D. Conn. Aug. 30, 2016) .......................................... 20

*Darrah v. Friendly Ice Cream Corp.*,
   328 F. Supp. 2d 319 (N.D.N.Y. 2004) ..................................................... 10

*DDK Hotels, LLC v. Williams-Sonoma, Inc.*,
   6 F.4th 308 (2d Cir. 2021) ............................................................... 5,6,7,8

*DeGaetano v. Smith Barney, Inc.*,
   983 F. Supp. 459 (S.D.N.Y. 1997) ........................................................... 14

*Doe v. Trump Corp.*,
   6 F.4th 400 (2d Cir. 2021) ......................................................................... 4

*Drapkin v. Mafco Consol. Group, Inc.*,
   818 F. Supp. 2d 678 (S.D.N.Y. 2011) ...................................................... 10

*Elmenayer v. ABF Freight System, Inc.*,
   318 F.3d 130 (2d Cir. 2003) ..................................................................... 22

*Espinosa v. SNAP Logistics Corp.*,
   2018 WL 9563311 (S.D.N.Y. Apr. 3, 2018) ............................................ 13

*F & K Supply Inc. v. Willowbrook Dev. Co.*,
   732 N.Y.S.2d 734 (3d Dept. 2001) ........................................................... 15

*Fernandez v. Windmill Distribg. Co.*,
   159 F. Supp. 3d 351 (S.D.N.Y. 2016) ...................................................... 20

*First Options of Chi., Inc. v. Kaplan*,
   514 U.S. 938 (1995) ................................................................................... 5

*Georgia Properties, Inc. v. Dalsimer*,
   835 N.Y.S.2d 41 (1st Dept. 2007) ....................................................... 15,17

*Geromanos v. Columbia Univ.*,
   322 F.Supp.2d 420 (S.D.N.Y. 2004) ........................................................ 20

*Green Tree Financial Corp.–Ala. v. Randolph*,
    531 U.S. 79 (2000) ................................................................... 11

*Hadnot v. Bay, Ltd.*,
    344 F.3d 474 (5th Cir. 2003) .................................................. 14

*Haghpassand v. Reuters Am. Inc.*,
    120 F. App'x 859 (2d Cir. 2005) ............................................ 23

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
    139 S. Ct. 524 (2019) ............................................................... 5

*HIM Portland, LLC v. DeVito Builders, Inc.*,
    317 F.3d 41 (1st Cir. 2003) ....................................................... 9

*In re Lavigne*,
    114 F.3d 379 (2d Cir. 1997) .................................................... 10

*Keating v. Carey*,
    706 F.2d 377 (2d Cir. 1983) .................................................... 21

*Kemiron A., Inc. v. Aguakem Intern., Inc.*,
    290 F.3d 1287 (11th Cir. 2002) ................................................. 9

*Kopchik v. Town of E. Fishkill, New York*,
    759 F. App'x 31 (2d Cir. 2018) .............................................. 24

*Kraiem v. JonesTrading Inst. Ser. LLC*,
    492 F.Supp.3d 184 (S.D.N.Y. 2020) ...................................... 24

*LAVVAN, Inc. v. Amyris, Inc.*,
    2022 WL 4241192 (2d Cir. Sept. 15, 2022) ............................. 6

*Marcano-Rivera v. Pueblo Intern., Inc.*,
    232 F.3d 245 (1st Cir. 2000) ................................................... 22

*Mercado v. Schwartz*,
    209 A.D.3d 30 (2d Dept. 2022) ......................................... 16,17

*Meyer v. Uber Techs., Inc.*,
    868 F.3d 66 (2d Cir. 2017) ........................................................ 3

*Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*,
    473 U.S. 614 (1985) ................................................................ 14

v

*Morse v. University of Vermont*,
   973 F.2d 122 (2d Cir. 1992)................................................................................ 21

*Mun. Capital Appreciati Partners, I, L.P. v. Page*,
   181 F. Supp. 2d 379 (S.D.N.Y. 2002) ................................................................ 15

*Nicosia v. Amazon.com*,
   834 F.3d 220 (2d Cir. 2016) ................................................................................. 3

*Nicosia v. Amazon.com, Inc.*,
   384 F. Supp. 3d 254 (E.D.N.Y. 2019), *aff'd*, 815 F. App'x 612 (2d Cir. 2020)......................... 9

*Nino v. Jewelry Exch., Inc.*,
   609 F.3d 191 (3d Cir. 2010)................................................................................ 14

*Paladino v. Avnet Computer Techs., Inc.*,
   134 F.3d 1054 (11th Cir. 1998) ........................................................................... 14

*Perdue Farms Inc. v. Design Build Contracting Corp.*,
   263 F. App'x 380 (4th Cir. 2008) .......................................................................... 9

*Perez v. Globe Airport Sec. Services, Inc.*,
   253 F.3d 1280 (11th Cir. 2001) ........................................................................... 17

*Ragone v. Atl. Video at Manhattan Ctr.*,
   595 F.3d 115 (2d Cir. 2010)................................................................ 12,16,17,18,19

*Republic of Ecuador v. Chevron Corp.*,
   638 F.3d 384 (2d Cir. 2011)................................................................................. 9

*Republic of Kazakhstan v. Chapman*,
   2022 WL 420357 (S.D.N.Y. Feb. 10, 2022)........................................................... 5

*Sablosky v. Gordon Co.*,
   73 N.Y.2d 133 (1989) ...................................................................................... 12

*Schreiber v. K–Sea Transp. Corp.*,
   9 N.Y.3d 331 (2007) ................................................................................ 11,16,18

*Spinetti v. Serv. Corp. Int'l*,
   324 F.3d 212 (3d Cir. 2003)................................................................................ 14

*Toure v. Thunder Lube Inc.*,
   2019 WL 4805197 (E.D.N.Y. Sept. 30, 2019) .................................................. 13,15

*Vega v. Hempstead Union Free Sch. Dist.*,
  801 F.3d 72 (2d Cir. 2015)................................................................................ 19

*Zambrano v. Strategic Delivery Sols., LLC*,
  2016 WL 5339552 (S.D.N.Y. Sept. 22, 2016).............................................. 11,14,15

*Zerilli-Edelglass v. N.Y.C. Transit Auth.*,
  333 F.3d 74(2d Cir. 2003), *as amended* (July 29, 2003) ........................................ 23

**Statutes**

9 U.S.C. § 2 ........................................................................................................ 12

9 U.S.C. § 4 ................................................................................................ 9,12,18

CPLR 7515 ......................................................................................................... 18

Fed. R. Civ. P. 12(b) ..................................................................................... 19,24

**Secondary Sources**

5 Williston, Contracts (3d ed.), s 767 .............................................................. 15

Plaintiff Robert Gordon ("Gordon") submits this memorandum of law in opposition to the motion of Defendants Wilson Elser Moskowitz Edelman & Dicker LLP ("Wilson Elser"), Rory Lubin ("Lubin") and Stuart Miller ("Miller") (collectively, "Defendants") to compel arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. § 4 ("FAA") and to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## PRELIMINARY STATEMENT

Gordon is a skilled and experienced litigator. Wilson Elser hired him and was pleased with his work. When Gordon needed reasonable accommodations, he complied with Defendants' requests for medical documentation. But when Defendants received the documentation, they violated the law by refusing to consider the request, refusing to engage in the interactive process, and refusing to accommodate his disabilities. Worse, Defendants then terminated Gordon due to his disabilities and without any good-faith instruction that his performance was inadequate. They also did so in a manner that breached his contract with Wilson Elser. Gordon, a collegial and loyal attorney at the firm, was abruptly kicked to the street with no job and a family to support.

Instead of taking responsibility for their unlawful and harmful actions, Defendants filed a motion that is doomed to fail in their bid to avoid court and hide in private arbitration with no public access or jury.

Defendants' motion to compel arbitration must fail. As a threshold issue, the Court, not an arbitrator, must decide whether the Of-Counsel Agreement (the "Agreement") and its arbitration clause is enforceable since Defendants' fail to show evidence of a clear and unmistakable intent to have an arbitrator decide all issues, including that of arbitrability. As the Court should find, the Agreement's arbitration terms are unconscionable and against public policy because they intentionally interfere with and diminish Gordon's statutory civil rights.

Indeed, the Agreement was written with the sole purpose in bad faith to dissuade Wilson Elser employees like Gordon from bringing employment claims by wrongly scaring them into believing they must foot the bill for a private arbitrator and cannot receive an award of attorney's fees, even where they prevail. In addition, here, the offending terms cannot be severed. Instead, the entire arbitration agreement must be voided, with Gordon permitted to litigate in court.

Similarly, and in the alternative, Defendants' motion to dismiss under Rule 12(b)(6) must fail because all of Gordon's claims are timely, sufficiently pled, and he worked and felt the impact of Defendants' discriminatory and unlawful conduct within New York City, placing him within the jurisdiction of the NYCHRL.

### STATEMENT OF FACTS

In 2016, Gordon began working as a litigator for Wilson Elser and was terminated for discriminatory reasons on February 1, 2022. (Dkt. #1, Compl. ¶¶ 2, 9.) Gordon had never been given or shown any performance review or received any good-faith instruction that his performance was inadequate. (*Id*. ¶ 7.) Often, he received praise for his work. (*Id*.)

In 2018, Gordon sought reasonable accommodations and, at Defendants' request, obtained supporting medical documentation. (*Id*. ¶¶ 69-88.) Defendants never rejected the requests, but simply did not respond, leaving Gordon in the dark. (*Id*. ¶¶ 91-93.) In January 2022, Gordon made a new request for reasonable accommodation, which Defendants rejected without engaging in the interactive process. (*Id*. ¶¶ 102-105.) Five days later, on February 1, 2022, Gordon was unlawfully terminated by Defendants based on his disability and in breach of the Agreement requiring 30-days prior written notice. (*Id*. ¶¶ 108-114;118.)

To remedy these unlawful acts, Gordon brings claims pursuant to the Family Medical Leave Act ("FMLA"), the New York State ("NYSHRL") and City Human Rights Law

("NYCHRL"), and New York state law for breach of contract. Gordon also filed a charge with the Equal Employment Opportunity Commission and will amend his complaint to add claims under the Americans with Disabilities Act ("ADA") after receiving a right to sue letter. (Compl. ¶ 12 n.1.)

## LEGAL STANDARD

When deciding a motion to compel arbitration, courts apply a standard "similar to that applicable for a motion for summary judgment." *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017). A court "consider[s] all relevant, admissible evidence submitted by the parties and contained in 'pleadings, depositions, answers to interrogatories, and admissions on file, together with ... affidavits,'" *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 155 (2d Cir. 2002) (quoting Fed. R. Civ. P. 56(c)) and draws all reasonable inferences in favor of the non-moving party. *Nicosia v. Amazon.com*, 834 F.3d 220, 229 (2d Cir. 2016).

## ARGUMENT

### I. Defendants Should Waive Arbitration and Proceed in Court

If Defendants are truly litigators that believe in the civil justice and jury system, they should waive the arbitration clause and not rely on a paid-for arbitration behind closed doors. Defendants should welcome the chance to defend Gordon's claims in open court.

### II. The Court Must Decide If the Arbitration Agreement is Unconscionable

Defendants wrongly claim that the issue of arbitrability and whether the Agreement is void for being unconscionable must be decided by an arbitrator and not the court. However, as Defendants fail to appreciate, there is no evidence of a clear and unmistakable intent to have an arbitrator decide all issues including the issue of arbitrability. As an example, the Agreement does not require that all disputes between the parties be arbitrated (Ex. 1, Agreement ¶ 10, p. 4 -

explicitly excluding certain types of disputes from arbitration) and an arbitrator does not get involved *until and unless* the matter was unresolved after private negotiations and or mediation failed (Ex. 1, Agreement ¶ 10, p. 4-5). Thus, this Court retains jurisdiction to decide issues of arbitrability as well as the validity of the purported arbitration agreement.

1.     **Defendants Waived Any Argument that the Arbitrator Must Decide the Threshold Issue of Arbitrability Instead of the Court**

In passing, Defendants state that issues of arbitrability should be decided by an arbitrator since the Agreement references the AAA arbitration rules and cites to *Contec Corp. v. Remote Sol. Co.*, 398 F.3d 205, 208 (2d Cir. 2005). (Def. at 9.)

However, Defendants' lack of argument or explanation on this point acts as a waiver of the argument. *Doe v. Trump Corp.*, 6 F.4th 400, 410 (2d Cir. 2021) (passing reference to *Contec* did not adequately address issue of arbitrability). Defendants' claim that arbitrability is for the arbitrator contains no explanation of what they mean exactly and what type of issues they are referring to. More problematically, Defendants do not attach the AAA rules to their motion, preventing the court from analyzing what the applicable rules say about arbitrator's jurisdiction.

As a result, Defendants waived the argument and any issue of arbitrability, including whether the Agreement is unconscionable, must be decided by the district court.

2.     **The Agreement Lacks Clear and Unmistakable Intent to show that the Parties Delegated the question of Arbitrability to an Arbitrator**

As they mention in passing, Defendants claim that the Agreement's reference to the AAA arbitration rules means the arbitrator has sole authority to decide threshold issues of arbitrability including the validity of the arbitration agreement itself, citing *Contec Corp. v. Remote Sol. Co.*, 398 F.3d 205, 208 (2d Cir. 2005). Again, Defendants make this assertion without providing the AAA rules for the court to review as admissible evidence.

Parties may "agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions as well as underlying merits disputes." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 527 (2019). "The question of who decides arbitrability is itself a question of contract." *Id*. In 2019, the U.S. Supreme Court reaffirmed that courts "should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." *Henry Schein v. Archer and Whites Sales, Inc.*, 139 S. Ct. 524, 531 (2019); *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Recently, the Second Circuit confirmed that where "the question is *who* should decide arbitrability, there is a presumption that the question should be resolved by the court." *DDK Hotels, LLC v. Williams-Sonoma, Inc.*, 6 F.4th 308, 317 (2d Cir. 2021).

In terms of the burden, "defendants also bear the burden of showing that the agreement effects such a delegation." *Republic of Kazakhstan v. Chapman*, 2022 WL 420357, at *6-7 (S.D.N.Y. Feb. 10, 2022) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944-45 (1995) (noting presumption that Court decides arbitrability)).

In this case, there is no clear and unmistakable evidence that the arbitrator must decide threshold issues. First, the Agreement contains no express delegation clause directly stating that the arbitrator decides threshold issues. *DDK Hotels*, 6 F.4th at 323 ("The parties could have unambiguously delegated arbitrability to the arbitrator by including a provision expressly stating that all disputes concerning arbitrability would be resolved by the arbitrator. They did not do so. We are not empowered to re-write their agreement."). With no express delegation, Defendants must rely on mere inference to overcome presumed judicial jurisdiction.

Second, contrary to Defendants' claim, referencing the AAA rules does not provide clear and unmistakable evidence of agreeing that arbitrability must be decided by an arbitrator. As

Defendants wrongly claim, *DDK Hotels* clarifies that *Contec* does not create a *per se* rule for inferring who decides arbitrability when AAA rules are referenced because context matters. *DDK Hotels*, 6 F.4th at 318.

As the Second Circuit explains, where "the arbitration agreement is narrower, vague, or contains exclusionary language suggesting that the parties consented to arbitrate only a limited subset of disputes, incorporation of rules that empower an arbitrator to decide issues of arbitrability, standing alone, does not suffice to establish the requisite clear and unmistakable inference of intent to arbitrate arbitrability." *DDK Hotels*, 6 F.4th at 319.

In this case, ambiguity of who decides arbitrability exists because the Agreement does not require that all disputes between the parties be arbitrated. The Agreement explicitly excludes certain types of disputes from arbitration, including "claims for workers compensation, state disability insurance and unemployment insurance benefits." (Ex. 1, Agreement ¶ 10, p. 4.) Given these exclusions, reference to AAA, unlike in *Contec*, does not provide undisputed proof of delegating questions of arbitrability to the arbitrator because there is "no agreed-to obligation to arbitrate all disputes, including the question of arbitrability." *DDK Hotels*, 6 F.4th at 321 n.4.

Third, the Agreement fails to unambiguously incorporate by reference the AAA as binding on mediation or arbitration. Instead, the Agreement ambiguously states that if informal negotiations fail, "the parties *shall endeavor to* settle the dispute by mediation under the then current AAA Procedure for Mediation of Employment Disputes." (Ex. 1, Agreement ¶ 10, p. 5.) (emphasis added). The "shall endeavor" language suggests that using the AAA is optional, thereby creating ambiguity on whether the AAA rules are actually incorporated. *LAVVAN, Inc. v. Amyris, Inc.*, 2022 WL 4241192, at *2 (2d Cir. Sept. 15, 2022) (explaining that ordinary contract principles and all pertinent evidence must be examined to determine question of who decides

arbitrability). Under New York law, this vague clause must be construed against Defendants. *Albany Sav. Bank, FSB v. Halpin*, 117 F.3d 669, 674 (2d Cir. 1997) ("New York contract law includes the rule that ambiguities in contracts should be construed against the drafter.").

In addition, the Agreement states that "the arbitrator should not be empowered to reinstate a former partner." (*Id.*) This contradicts the AAA rules that empower an arbitrator "to grant any remedy or relief that would have been available" to the parties in court. (Ex. 2 at Section 39(d).) While Defendants claim to invoke the AAA rules, the Agreement limits the arbitrator's jurisdiction over equitable relief. (*Id.*) The Agreement also limits the arbitrator's ability to award certain legal relief like punitive damages contra the AAA rules. (Ex. 1, Agreement ¶ 10 p. 5.) These carve-outs raise more ambiguity on whether the AAA rules are incorporated such that arbitrability was agreed to be decided by the arbitrator. Defendants are asking this court to infer an agreement between the parties that the arbitrator has sole jurisdiction while limiting that same jurisdiction. This does not overcome the presumption in favor of a court deciding arbitrability.

Fourth, the Agreement's requirement that informal negotiations and mediation occur before arbitration creates more ambiguity and strongly suggest that the arbitrator was not agreed by the parties to be the sole decision maker. (Ex. 1, Agreement ¶ 10.)

In *DDK Hotels*, the Second Circuit held that where the arbitration agreement is but one of several possible dispute resolution options in a contract, that the issue of arbitrability is sufficiently ambiguous so as to negate any inference that the arbitrator be the sole entity to decide arbitrability and thus in those situations the court must retain the right to decide arbitrability. *DDK Hotels*, 6 F.4th at 319. On that basis, *DDK Hotels* affirmed the district court's

denial of defendants' motion to have the arbitrator decide arbitrability and denied defendants'
motion to compel arbitration.

Here, the Agreement requires initial private negotiations and then a second private
mediation before arbitration. It was only if private negotiations and or mediation failed to resolve
an issue – including the issue of the "validity" of the agreement itself – that the matter would
then be turned over to arbitration.

The Agreement states under "Dispute Resolution" that:

> Any dispute arising out of or relating to this Of Counsel
> Agreement or the breach, termination <u>or validity</u> thereof,
> <u>which has not been resolved by the mediation procedure</u> as
> provided herein within 60 days of the initiation of such
> procedures, shall be settled by arbitration . . ."

(Ex. 1, Agreement ¶ 10, p. 4.) (emphasis added).

Accordingly, the AAA Rules would not apply to the issue of validity of the Agreement or the
issue of arbitrability *until and unless* the matter was unresolved and turned over to arbitration.
Given that by the terms of the contract itself, arbitrability and the issue of the validity of the
contract as a whole could be decided *outside* of arbitration, it is at least ambiguous that the
arbitrator was intended to be the exclusive entity to decide the validity of the contract.

As a result, under *DDK Hotels*, there is no clear and unmistakable intent to have all issues
decided by arbitration given that some if not all issues can be decided outside of arbitration under
the Agreement.

In connection with requiring negotiation and mediation, the court cannot compel
arbitration because the conditions precedent to arbitration have not been satisfied as required in
Section 10 "Dispute Resolution." Defendants never compelled Gordon to engage in this informal
process. Instead, Defendants skip two steps ahead and compel arbitration. But the Agreement

says arbitration can only begin where a dispute "which has not been resolved by the mediation procedure as provided herein within 60 days of the initiation of such procedures" then and only then "shall [the dispute] be settled by arbitration[.]" (Ex. 1, Agreement ¶ 10, p. 5.). As the First Circuit held, "[b]ecause the parties intentionally conditioned arbitration upon either party's request for mediation, we conclude that HIM Portland's failure to request mediation precludes it from compelling arbitration under the FAA." *HIM Portland, LLC v. DeVito Builders, Inc.*, 317 F.3d 41, 42 (1st Cir. 2003); *Perdue Farms Inc. v. Design Build Contracting Corp.*, 263 F. App'x 380, 383 (4th Cir. 2008); *Kemiron A., Inc. v. Aguakem Intern., Inc.*, 290 F.3d 1287, 1291 (11th Cir. 2002).

Finally, Defendants failed to send the "Notice of Intention to Arbitrate," (Def. Ex. C), to Gordon's home address as the Agreement requires, (Ex. 1 ¶ 15, "Notices"), making the Notice void. The motion to compel must be denied.

### 3.     The Court Must Decide Issues of Equitable Estoppel

The court should apply the doctrine of equitable estoppel and black-letter contract law to prevent compelling arbitration because Defendants breached the Agreement when improperly terminating Gordon without written notice.

"Traditional principles of equitable estoppel apply in the arbitration context just as they apply to other types of contractual disputes." *Nicosia v. Amazon.com, Inc.*, 384 F. Supp. 3d 254, 273 (E.D.N.Y. 2019), *aff'd*, 815 F. App'x 612 (2d Cir. 2020). "[E]quitable estoppel is properly invoked where the enforcement of the rights of one party would work an injustice upon the other party due to the latter's justifiable reliance upon the former's words or conduct." *Republic of Ecuador v. Chevron Corp.*, 638 F.3d 384, 400 (2d Cir. 2011).

"A fundamental principle of contract law provides that the material breach of a contract by one party discharges the contractual obligations of the non-breaching party." *Drapkin v. Mafco Consol. Group, Inc.*, 818 F. Supp. 2d 678, 686 (S.D.N.Y. 2011) (citing *In re Lavigne*, 114 F.3d 379, 387 (2d Cir. 1997)).

Defendants did not follow their own contract with Gordon by failing to provide written notice of his termination. (Compl. ¶¶ 118-119) Instead, Lubin fired Gordon via an unprofessional and taunting phone call. (*Id*. ¶ 114.) No written notice of termination was ever provided.

Given this material breach, Defendants cannot ask this Court to enforce the bits and pieces of the Agreement they like after violating its terms previously. *Drapkin*, 818 F.Supp.2d at 686. Courts will decline to enforce arbitration agreements when the employer fails to follow their own contractual processes surrounding terminations. *Darrah v. Friendly Ice Cream Corp.*, 328 F. Supp. 2d 319, 323 (N.D.N.Y. 2004) (refusing to compel arbitration when employer ignored its own contract contemplating open-door discussion of disputes as a condition precedent to arbitration). Accordingly, Defendants' breach of the Agreement waives and estops any enforcement of the arbitration clause against Gordon.

### 4.    The Court Must Decide Issues of Effective Vindication Because Gordon Cannot Vindicate his Rights in Arbitration Due to Prohibitive Costs

Gordon cannot effectively vindicate his civil rights because the Agreement requires him to split the cost of the AAA arbitrator with Defendants, a large law firm and two equity partners.

The effective vindication exception to arbitration applies in situations that create a "prospective waiver of a party's right to pursue statutory remedies." *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 236 (2013). The exception would apply to "filing and administrative fees attached to arbitration that are so high as to make access to the forum impracticable," *id*., or

"existence of large arbitration costs could preclude a litigant ... from effectively vindicating her federal statutory rights." *Green Tree Financial Corp.–Ala. v. Randolph*, 531 U.S. 79, 90 (2000).

In this case, the Agreement provides that "each party shall equally bear the fees and costs of AAA mediation and/or arbitration except as limited by individual jurisdictional requirements." (Ex. 1, Agreement 10 p. 5-6.)

On its face, this grossly inequitable clause is designed to scare any employee from bringing a claim. In practice, the clause will prevent the effective vindication of Gordon's claims. *Zambrano v. Strategic Delivery Sols., LLC*, 2016 WL 5339552, at *5 (S.D.N.Y. Sept. 22, 2016) (describing potential situations in which the "filing and administrative fees attached to arbitration ... are so high as to make access to the forum impracticable"). Likewise, in *Brady v. Williams Capital Group*, the First Department refused to enforce an arbitration fee-splitting provision requiring a former employee to pay AAA fees and costs of $21,150 because the plaintiff had been unemployed since defendant fired her 18 months prior and the substantial difference between the AAA cost and the much cheaper federal litigation. *Brady v. Williams Capital Group, L.P.*, 878 N.Y.S.2d 693, 699 (1st Dept. 2009), *aff'd as modified*, 928 N.E.2d 383 (N.Y. 2010). In *Schreiber v. K–Sea Transp. Corp.*, the New York Court of Appeals held that a $10,000 cost of arbitration before the AAA was prohibitively expensive for an employee. *Schreiber v. K–Sea Transp. Corp.*, 9 N.Y.3d 331 (2007).

Gordon has been unemployed since Defendants fired him in February 2022. Splitting the cost of the arbitrator would impose an undue burden on Gordon and make it impossible for him to vindicate his civil rights. While the AAA rules include a provision for hardship to reduce administrative fees, that does not cover the cost of the arbitrator's time, which is the more expensive aspect of arbitration.

### III. Arbitration cannot be Compelled Because the Agreement is Unconscionable and Against Public Policy

The Court should deny the motion to compel arbitration because the Agreement is unconscionable and against public policy.

#### 1.     Legal Standard on Unconscionable and Void Arbitration Agreements

The FAA provides that written arbitration agreements "shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *See* 9 U.S.C. § 2. This means that the FAA only governs valid agreements to arbitrate as such purported agreements can be invalidated by "generally applicable contract defenses, such as fraud, duress, or unsconscionabilty [sic]." *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 121 (2d Cir. 2010).

Under New York law, an agreement is substantively unconscionable when "one or more key terms are unreasonably favorable to one party." *Sablosky v. Gordon Co.*, 73 N.Y.2d 133, 138 (1989). To invalidate an arbitration agreement due to unconscionability, courts generally look for both procedural and substantive unconscionability. *Ragone*, 595 F.3d at 119. But a contract can be found unconscionable on substantive unconscionability alone. *Id.* The First Department has suggested that excessive arbitration fees meet that standard. *Brower v. Gateway 2000, Inc.*, 676 N.Y.S.2d 569, 574 (1st Dept. 1998).

#### 2.     Arbitration Cannot be Compelled because the Agreement is Unconscionable and Against Public Policy

In this case, Defendants motion to compel arbitration must be denied because the arbitration agreement they seek to compel is unconscionable and interferes with Gordon's statutory civil rights in the employment context. *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 51 (1974) (holding that Title VII rights may not be prospectively waived).

The Agreement denies Gordon the following relief and imposes undue costs:

> Each party hereby waives any right to punitive, exemplary or treble damages.
>
> Each party shall equally bear the fees and costs of AAA mediation and/or arbitration except as limited by individual jurisdictional requirements.
>
> Each party shall be solely responsible for their own attorney's fees and related costs.

(Ex. 1 at p. 5-6.)

As the Agreement prevents Gordon from seeking punitive damages, collecting costs, or collecting attorney's fees or expert witness fees, the Agreement prevents him from pursuing statutory remedies of attorney's fees granted to him under the FMLA, NYSHRL and NYCHRL, and punitive damages under the NYSHRL and NYCHRL, and exemplary damages under the FMLA while imposing the burdensome "fees and costs" of AAA arbitration. The ADA allows for attorney's fees pursuant to 42 U.S. Code § 12205 and allows for punitive damages pursuant to 42 U.S.C. § 1981a(b)(1). The AAA fees and costs are enough, themselves, to support a finding of unconscionability without any procedural element. *Brower*, 676 N.Y.S.2d at 254.

In such circumstances, Courts has found such provisions that undermine anti-discrimination statutes to be unconscionable and unenforceable. In *Toure v. Thunder Lube*, the district court concluded that the arbitration agreement's "provisions that waive Plaintiff's right to seek liquidated damages, equitable relief, and attorneys' fees, as well as its cost shifting provision, are unenforceable" and that the "cost shifting provision also prevents the 'effective vindication' of Plaintiff's FLSA and NYLL rights and, thus, is void." *Toure v. Thunder Lube Inc.*, 2019 WL 4805197, at *5 (E.D.N.Y. Sept. 30, 2019); *Espinosa v. SNAP Logistics Corp.*, 2018 WL 9563311, at *6 (S.D.N.Y. Apr. 3, 2018) (invalidating arbitration agreement that

- 13 -

waived Plaintiff's right to attorney fees, punitive damages and equitable relief); *Zambrano v. Strategic Delivery Sols., LLC*, 2016 WL 5339552, at \*6 (S.D.N.Y. Sept. 22, 2016) (holding that "arbitration provision cannot preclude [plaintiffs] from recovering their reasonable attorney's fees and costs should they prevail on their claims"); *DeGaetano v. Smith Barney, Inc.*, 983 F. Supp. 459 (S.D.N.Y. 1997).

Appellate courts outside the Second Circuit have ruled similarly. *Nino v. Jewelry Exch., Inc.*, 609 F.3d 191, 203 (3d Cir. 2010) (arbitration agreement's "restriction on the arbitrator's ability to award attorney's fees, costs, and expenses [to the plaintiffs was] substantively unconscionable" because it "undermine[d] the legislative intent behind fee-shifting statutes like Title VII"); *Spinetti v. Serv. Corp. Int'l*, 324 F.3d 212, 216 (3d Cir. 2003) ("[T]he proviso requiring each party to pay its own attorney's fees—regardless of the outcome of the arbitration—runs counter to statutory provisions under Title VII and ADEA that permit an award of attorney's fees and costs to a prevailing party."); *Hadnot v. Bay, Ltd.*, 344 F.3d 474, 478 (5th Cir. 2003) (citing *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 628 (1985) ("the Agreement's ban on punitive and exemplary damages is unenforceable in a Title VII case."); *Paladino v. Avnet Computer Techs., Inc.*, 134 F.3d 1054, 1062 (11th Cir. 1998).

Finally, the Agreement setting the "place of arbitration" vaguely as "New York" without designating the city or county is unconscionable because it could force Gordon to arbitrate in Buffalo at great expense compared to a convenient forum like the Southern District. *Brower*, 246 A.D.2d at 254 (inconvenience of arbitration location is factor to consider for unconscionability).

Accordingly, the Agreement cannot be the basis to compel arbitration because its terms are unconscionable and violate public policy.

3.   **The Offending Terms are not Severable, were Designed to Purposively Deceive Wilson Elser Employees and are a Shocking Affront to Public Policy**

Even if Defendants agreed to waive the unconscionable terms, which they have not, the offending terms are not severable from the Agreement. That is, severability cannot be used to save the Agreement and compel arbitration. Instead, the entire Agreement's arbitration clause must be invalidated, and Gordon permitted to proceed in district court because the Agreement contains no severability clause and because the terms were included to scare and dissuade employees from asserting their civil rights.

Under New York law, "whether a contract is entire or severable generally is a question of intention, to be determined from the language employed by the parties, viewed in the light of the circumstances surrounding them at the time they contracted." *Christian v. Christian*, 365 N.E.2d 849, 856 (N.Y. 1977) (citing 5 Williston, Contracts (3d ed.), s 767, p. 629)); *F & K Supply Inc. v. Willowbrook Dev. Co.*, 732 N.Y.S.2d 734, 738 (3d Dept. 2001).

"There is no precise test for determining whether a contract is severable or entire." *Mun. Capital Appreciati Partners, I, L.P. v. Page*, 181 F. Supp. 2d 379, 394-95 (S.D.N.Y. 2002). But "where the main objective of an agreement is illegal, courts will not sever and enforce incidental legal clauses." *Georgia Properties, Inc. v. Dalsimer*, 835 N.Y.S.2d 41, 43 (1st Dept. 2007).

In terms of severability, federal courts in this district have found that where an arbitration agreement contains a severability clause, unconscionable terms can be severed and arbitration compelled. *See Toure*, 2019 WL 4805197, at *5; *Espinosa*, 2018 WL 9563311, at *6; *Zambrano*, 2016 WL 5339552, at *6; *see also Adams v. Kent Sec. Inc.*, 68 N.Y.S.3d 58, 60 (1st Dept. 2017).

However, the Agreement in this case has no severability clause. (Ex. 1.) The Second Circuit, in applying New York state contract law, has not held definitively what result must follow without a severability clause. Instead, the Second Circuit has said that a severability

- 15 -

clause weighs in favor of severing unconscionable claims rather than invaliding an arbitration agreement. *AFLAC v. Baker*, 848 F. App'x 11, 13 (2d Cir. 2021). Even in *Ragone*, 595 F.3d 115, 124 (2d Cir. 2010), the Second Circuit's finding that severability is proper is not persuasive because it relies on two New York decisions, (*Schreiber v. K–Sea Transportation Corp.*, 9 N.Y.3d 331 (2007) and *Brower,* 676 N.Y.S.2d at 574-75), and that did not clearly state whether the at-issue arbitration agreements contained a severability clause. *Ragone*, 595 F.3d at 124.

Yet, a recent New York case weighs against severability. In *Mercado v. Schwartz*, the Second Department found provisions in a medical treatment waiver related to medical malpractices unenforceable as against public policy and refused to sever the terms. *Mercado v. Schwartz*, 209 A.D.3d 30 (2d Dept. 2022). The Court invalidated the entire agreement because there was no severability clause, the objective of the agreement was to undermine the patient's ordinary legal rights, and the circumstances around the parties did not suggest severability was anticipated. *Id.*

Like the Court found in *Mercado*, Defendant's Agreement lacks a severability clause and has an untoward purpose that is against public policy. The Agreement's goal is to dissuade employees like Gordon from enforcing their rights. Indeed, this Court can infer that Defendants drafted the Agreement in bad faith for that improper purpose. Defendants know their provisions are unconscionable and unenforceable such as no attorney's fees, sharing AAA costs, and no punitive damages.

But like in *Mercado*, Defendants include these clauses to intimidate and dissuade employees from making claims. It would be like a landlord creating a lease that says if rent is one day late, you will be fined $5,000 and evicted the next day. The landlord knows that is unenforceable and does it to intimidate the uninformed tenant. But that's what Defendants are

- 16 -

doing here – they are using an Agreement they know is unlawful and even go so far as to deceive their own employees about fee-shifting for civil rights claims. Telling employees they will have to pay their own attorney's fees, even if they prevail on a discrimination claim, is a lie and a knowing fraud. No court should be aiding Defendants in such blatant dishonesty.

The Eleventh Circuit has rebuked this same behavior:

> If an employer could rely on the courts to sever an unlawful provision and compel the employee to arbitrate, the employer would have an incentive to include unlawful provisions in its arbitration agreements. Such provisions could deter an unknowledgeable employee from initiating arbitration, even if they would ultimately not be enforced.

*Perez v. Globe Airport Sec. Services, Inc.*, 253 F.3d 1280, 1286 (11th Cir. 2001).

Following *Mercado* and given the illegal purpose of the Agreement, (*Georgia Properties*, 835 N.Y.S.2d at 43), this Court should not sever the unconscionable terms and, instead, hold that the entire Agreement is invalid while denying the motion to compel arbitration.

Moreover, severability cannot be assumed given the issue of intent that is not in the record. There is no indication of whether Defendants would have agreed to arbitrate if they would have to pay the entire AAA cost and that Gordon could obtain attorney's fees and punitive damages. Without knowing the parties' intent, it is impossible to rewrite the contract.

However, as there have been recent changes by the New York State legislature, severability should no longer be the rule, but rather, at least in the case of discrimination claims, the entire arbitration agreement should be void when unconscionable terms exist.

**4.     The Agreement is Void under CPLR 7515 and New York Law Does Not Permit Severing the Unconscionable Terms**

In *Ragone*, the Second Circuit severed the offending arbitration agreement terms rather than void the entire contract. It did so however under the belief that New York State law would

require such result. *Ragone* cited New York cases to justify severance: *Schreiber*, 9 N.Y.3d at 331 and *Brower*, 246 A.D.2d at 246. But for purposes of New York law, since *Schreiber* and *Brower* were decided, the legislature passed CPLR 7515 which deems contracts that have a mandatory arbitration clause pertaining to discrimination claims as void.

CPLR 7515 has been held to be displaced by the FAA and thus to be of no effect on valid arbitration agreements. *Charter Commc'ns, Inc. v. Garfin*, 2021 WL 694549 at *14 (S.D.N.Y. Feb. 23, 2021). But such displacement is for valid arbitration agreements. Under the FAA, if an agreement is invalidated due to the usual objections to contract formation under common law, then the FAA has no jurisdiction over such purported agreement. As in the case where an arbitration agreement is found to be unconscionable or against public policy, such agreement is invalid and therefore outside of the jurisdiction of the FAA.

Accordingly, where a term in an arbitration agreement pertaining to discrimination claims is found to be unconscionable, courts looking to New York law can no longer follow the holdings in *Schreiber* and *Brower* that call for severance of the offending terms. This is because, CPLR 7515 has overruled *Schreiber* and *Brower* at least with respect to claims based on discrimination. The Legislature has clearly stated that such agreements to arbitrate discrimination lawsuits should be entirely null and void, not merely severing the offending terms.

Here, there is no conflict between the FAA and CPLR 7515 because CPLR 7515 is acting as the "voice" of state law as it pertains to arbitration agreements that have been deemed invalid and thus outside the jurisdiction of the FAA. Accordingly, CPLR 7515 can inform courts on what to do with discrimination claims that are subject to arbitration agreements which have been found to be invalid. Thus, CPLR 7515 overrules *Schreiber* and *Brower* as to arbitrating discrimination claims. If a court, mandated to apply New York law, finds unconscionable terms

in an arbitration agreement that pertains to discrimination claims, that agreement should be declared void with no severing. The *Ragone* court even hinted at this result:

> While we affirm the district court's holding that the arbitration agreement is enforceable as modified by the defendants' waivers, we emphasize that <u>we do so with something less than robust enthusiasm</u>. Had the defendants attempted to enforce the arbitration agreement as originally written it is <u>not</u> clear that we would hold in their favor.

*Ragone*, 595 F.3d at 125 (emphasis added).

Accordingly, the Agreement should be declared void and Gordon permitted to litigate in court.

### IV. On the merits, Defendants' Motion to Dismiss should be Denied

Gordon's claims under the FMLA, NYSHRL and NYCHRL are timely and sufficiently pled, requiring denial of Defendants' motion to dismiss.

### 1.  Legal Standard

On a Rule 12(b)(6) motion to dismiss, the court must accept as true the factual allegations in the plaintiff's complaint and draws all inferences in the plaintiff's favor. *Allaire Corp. v. Okumus*, 433 F.3d 248, 249-50 (2d Cir. 2006). To survive dismissal, a complaint must plead enough facts to be plausible on its face. *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). A discrimination complaint need not allege facts establishing each element of a *prima facie* case of discrimination to survive a motion to dismiss. *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015).

### 2.  Gordon's FMLA Claim is Sufficiently Pled

Contrary to Defendant's motion, Gordon's FMLA claim is sufficiently pled. Defendants argue the FMLA claim should be dismissed because Gordon never requested FMLA leave and, as they assert, never had a qualifying FMLA condition. (Defs. at 7-8.) This is not correct or a basis to dismiss on the pleadings.

Knowing of Gordon's medical condition, Defendants interfered with his FMLA rights by failing to offer him leave or advise him of such rights terminating him. *Fernandez v. Windmill Distribg. Co.*, 159 F. Supp. 3d 351, 363 (S.D.N.Y. 2016) ("the failure to provide notice that inhibits or restricts an employee from successfully obtaining leave or the right to reinstatement does result in a denial of benefits and can result in a cause of action for interference."); *Craig v. U. of Connecticut Health Ctr.*, 2016 WL 4536440, at *5 (D. Conn. Aug. 30, 2016) ("Some courts have recognized that an employee may have an interference claim where an employer's failure to advise his employee of his FMLA rights prevented that person from exercising FMLA rights."); *Geromanos v. Columbia Univ.*, 322 F.Supp.2d 420, 430 (S.D.N.Y. 2004) (noting that failure to notify employee about FMLA procedures may "constitute interference with an employee's FMLA rights, if the lack of notice caused the employee to forfeit FMLA leave.").

Like his failure to accommodate claims, Defendants pushed Gordon out the door despite knowing of and failing to assess his medical condition. Defendants' citing a doctor's letter saying Gordon could "work on a full time basis," (Def. at 11), is belied by Defendants' claim that Gordon was not performing well enough.

More critically, Defendants misstate what the letter says, which refers to being "employed," but does not address "work on a full time basis" or whether a short leave is necessary, as Defendants wrongly claim. And the doctor's note is not from the time of his termination, but is from years earlier, making the letter an improper basis for dismissal before discovery. In addition, FMLA does not require a permanent medical condition, again undermining Defendant's reliance on the doctor's letter. *Geromanos*, 322 F.Supp.2d at 426 (FMLA focused on "temporary periods").

In addition, Gordon's EEOC charge was filed on June 21, 2022 with the New York Equal

Employment Opportunity Commission. (Ex. 3, EEOC Charge.) Given the pending EEOC charge, dismissing this action for lack of federal jurisdiction would be premature. The issue concerning federal jurisdiction should be stayed pending the EEOC determination and or issuance of a right to sue letter to Plaintiff from the EEOC so Gordon can file an amended complaint including the ADA claims.

   **3.**  **Gordon's Claims are Timely**

   Defendants wrongly claim the statute of limitations on Gordon's FMLA, NYSHRL, and NYCHRL claims all expired since those claims "accrued" in "2018." (Def. at 13.) However, Defendants cannot point to any actual accrual date for the initial 2018 accommodation request and Gordon renewed his request in late January 2022 a few weeks before his termination, making any such accommodation claim timely.

   Generally, Federal law governs the question of when a federal claim accrues. *Morse v. University of Vermont*, 973 F.2d 122 (2d Cir. 1992). A claim accrues when the plaintiff "knows or has reason to know" of the injury that is the basis of the action. *Id*.; *Keating v. Carey*, 706 F.2d 377, 382 (2d Cir. 1983). For a reasonable accommodation claim, the statute of limitations begins to run when the employer rejects the request.

   In this case, Defendants point to nothing in the pleading that they ever "rejected" Gordon's first request from 2018 or when they rejected it. Defendants have not identified a specific date when such claims allegedly "accrued" other than citing the general year "2018." (*Id*.) Nor do Defendants cite a specific "discrete event" which triggered the time of accrual. Unless Defendants are admitting that they denied Gordon's request for accommodations and informed him, it is impossible to calculate the running of any applicable statute of limitations.

Instead, Defendants simply invent that they rejected Gordon's claim in 2018 because that is the year they need to make their argument work.

In contrast, the cases Defendants cite involved specific dates when the employer denied an accommodation. *Elmenayer v. ABF Freight System, Inc.*, 318 F.3d 130, 132 (2d Cir. 2003) (finding for religious accommodation that "On June 13, 1996, Murphy verbally informed Elmenayer that the requested accommodation would not be granted."); *Ben-Levy v. Bloomberg L.P.*, 2012 WL 2477685, at *5 (S.D.N.Y. June 26, 2012) (citing specific dates for adverse acts on summary judgment). Unlike the clear rejections in *Elmenayer* and *Ben-Levy*, Defendants do not get to re-write the complaint and history to invent their own accrual date.

Even setting aside the lack of a defined accrual date, other circuits have found that reasonable accommodation claims can be continuing violations when the denials are similar. *Marcano-Rivera v. Pueblo Intern., Inc.*, 232 F.3d 245, 256 (1st Cir. 2000) ("Here, by contrast, the various incidents in the alleged "series" of discrimination are all similar in nature. Each episode alleged to have occurred outside the limitations period was a failure to accommodate comparable in nature to the discriminatory accommodation failures occurring within the limitations period, up to plaintiff's termination. Contrary to defendant's arguments, these failures to accommodate are plainly similar enough to constitute serial violations.").

Moreover, unaddressed by Defendants, Gordon requested a second separate accommodation in January 2022 a few days before his termination in February 2022, which restarts any statute of limitation. (Compl. ¶ 102.) Defendants conveniently ignore that Gordon has discrimination claims based on the denial of his request to be removed from Lubin's team on January 27, 2022 and that the termination in 2022 was a timely FMLA violation. That is, Gordon's request to be removed from Lubin's team on January 27, 2022 is a renewed request for

accommodation. That request was rejected on January 27, 2022, and Gordon was terminated five days later. Thus, arguably the earliest Gordon knew of a possible violation (if any) would have been January 27, 2022, when Miller rejected his request. Finally, Gordon's FMLA claim is tied to his termination for failure to offer him a leave, which was timely.

Furthermore, even if there was some colorable argument that Gordon's accommodation claim is untimely, which there is not, Defendants' refusal to respond to Gordon's request in 2018 or 2019 and their own delay requires this court to apply equitable tolling of any deadline. *Haghpassand v. Reuters Am. In*c., 120 F. App'x 859, 862 (2d Cir. 2005) (explaining that equitable tolling can be applied for Title VII claims to extend filing deadlines in rare circumstances). Like in Gordon's case "where plaintiff was unaware of his or her cause of action due to misleading conduct of the defendant," Defendants' tactical refusal to respond to his accommodation request, which they now seek to use for their own benefit in dismissing his claim, merits equitable tolling. *Zerilli-Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003), *as amended* (July 29, 2003).

Similarly, equitable estoppel bars Defendants from raising a statute of limitations defense given the unlawful and deceitful manner in which they refused to respond to his accommodation request and then terminated him on that same basis. *Chevron Corp.*, 638 F.3d at 400. Accordingly, Defendants' statute of limitation argument must be rejected.

## V.  Gordon Falls within the Jurisdiction of the NYCHRL Given that the Majority of his Cases were in New York City

Defendants are off the mark in claiming that Gordon's residence and office being outside of New York City prevents his claims under the NYCHRL. (Defs. at 10-11.)

Gordon pled that over 90% of the legal cases he handled as a litigator were in New York City courts and "Gordon made appearances as the attorney of record on cases filed in courts

within New York City," showing that Gordon would frequently feel the impact of Defendants'
discrimination within New York City. (Compl. ¶¶ 27-28.) *Kraiem v. JonesTrading Inst. Ser. LLC*,
492 F.Supp.3d 184, 195 (S.D.N.Y. 2020) (London employee who experienced racial harassment
in NYC during work trip could plead NYCHRL violations for those events). Defendants focus
only on the fact that Gordon had an office in Westchester. (Defs. at 10.) But his office location is
not dispositive if he was working in court in New York City on 90% of his cases. Instead of
trying to rebut this key pleading, Defendants string-cite irrelevant cases about residence.

Second, Defendants terminating Gordon prevented him from working in New York City
in the future, putting him within the law's protections given the future impact to be felt within
New York City. (Compl. ¶ 124.) *See Chau v. Donovan*, 357 F. Supp. 3d 276, 283 (S.D.N.Y.
2019). As a result, Gordon sufficiently pled that he would feel an impact in New York City.

**VI. Gordon Should be Granted Leave to Amend the Complaint Should the Court Rule
on Defendants' Motion to Dismiss under Rule 12(b)(6)**

Should the Court grant Defendants' motion to dismiss, Gordon requests leave to amend.
*Kopchik v. Town of E. Fishkill, New York*, 759 F. App'x 31, 38 (2d Cir. 2018) ("It is
inappropriate to deny a plaintiff the opportunity to replead after a defendant's motion to dismiss
is granted"). Gordon would add a claim under the ADA and provide more facts about why the
NYCHRL claim covers his work in New York City.

## CONCLUSION

Based on the above, Defendants' motion to compel arbitration and, in the alternative, to
dismiss the complaint must be denied.

- 24 -

Dated:  New York, New York
       October 5, 2022

Respectfully Submitted,

_____
SAMUEL O. MADUEGBUNA, ESQ.
WILLIAM W. COWLES II, ESQ.
**MADUEGBUNA COOPER LLP**
Attorneys for Plaintiff,
ROBERT GORDON
30 Wall Street, 8th Floor
New York, NY 10005
(212) 232-0155

TO:    JOHN M. FLANNERY, ESQ.
        Attorneys for Defendants,
        WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP,
        RORY L. LUBIN and STUART MILLER
        1133 Westchester Avenue
        White Plains, New York 10604
        (914) 323-7000