UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                                        :
ROBERT W. GORDON,                                                       :
                                                                        :
                        Plaintiff,                                      :
                                                                        :   22 Civ. 5212 (JPC) (JEW)
           -v-                                                          :
                                                                        :   OPINION AND ORDER
WILSON ELSER MOSKOWITZ EDELMAN &                                        :
DICKER LLP, *et al.*,                                                   :
                                                                        :
                        Defendants.                                     :
                                                                        :
------------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

      Robert W. Gordon, a civil litigator, brings this action against his former law firm, Wilson Elser Moskowitz Edelman & Dicker LLP ("Wilson Elser"), and two Wilson Elser partners, Stuart Miller and Rory L. Lubin. Gordon alleges interference with his rights under the Family and Medical Leave Act, breach of contract, and disability discrimination under state and city human rights laws. Defendants have moved to compel arbitration or, in the alternative, to dismiss the Complaint. Because the parties entered into a valid arbitration agreement that clearly and unmistakably evinces their intent to delegate the question of arbitrability to the arbitrator, and Gordon has refused to arbitrate, the Court compels arbitration. The Court further stays this case pending arbitration.

## I. Background

      The following facts are taken from the allegations in the Complaint, the documents it incorporates by reference, and declarations including attached exhibits submitted by the parties.[1]

---

[1] "Courts deciding motions to compel apply a standard similar to the one applicable to a motion for summary judgment," meaning that they can consider relevant evidence outside the complaint. *Starke v. SquareTrade, Inc.*, 913 F.3d 279, 281 n.1 (2d Cir. 2019). "On a motion for summary judgment, the court considers all relevant, admissible evidence submitted by the parties

Gordon began working at Wilson Elser in an Of Counsel position on August 16, 2016. Dkt. 1 ("Compl.") ¶ 57. Miller and Lubin were both partners at Wilson Elser during Gordon's employment. *Id.* ¶¶ 34, 40.[2] Gordon's employment at Wilson Elser was governed by an "Of Counsel Agreement," dated August 10, 2016. Dkts. 31-1, 35-1 ("Of Counsel Agreement"). As relevant here, the Of Counsel Agreement contains a "Dispute Resolution" section which provides:

> Any claim in contract, tort or otherwise (except for claims for workers compensation, state disability insurance and unemployment insurance benefits) arising out of or relating to this employment relationship, including without limitation, claims of discrimination in violation of federal or state statutes, breach of contract or any other employment or business related claim shall be resolved in accordance with the procedures specified below, which shall be the sole and exclusive procedures for the resolution of any such claims.

*Id.* § 10. The section continues, "the parties to this Agreement shall attempt in good faith to resolve any dispute arising out of or relating to this Agreement promptly by confidential negotiations," and then specifies procedures for those negotiations. *Id.* If those negotiations fail, "within 45 days of the disputing party's notice, or if the parties fail to meet within 30 days, the parties shall endeavor to settle the dispute by mediation under the then current [American Arbitration Association ("AAA")] procedure for Mediation of Employment Disputes." *Id.* If that mediation is not successful "within 60 days of the initiation of such procedures," then "[a]ny dispute arising out of or relating to this Of Counsel Agreement or the breach, termination, or validity thereof . . . shall be settled by arbitration in accordance with the then current AAA Rules for Arbitration of Employment Disputes by a sole arbitrator, mutually agreed upon by the parties." *Id.*

---

and contained in the pleadings, depositions, answers to interrogatories, admissions and affidavits, and draws all reasonable inferences in favor of the non-moving party." *Id.*

[2] Gordon alleges that Lubin was a contract partner and then an equity partner, who had the power to hire and fire Wilson Elser employees, Compl. ¶¶ 34, 37, and that Miller was an equity partner who was the head of Gordon's practice group and also had the power to hire and fire Wilson Elser employees, *id.* ¶¶ 40, 43, 45.

Gordon alleges that during his employment, Defendants discriminated against him based on his "physical and mental impairments [developed] due to prescription medications and traumatic life events that pre-dated the start of his employment with Wilson Elser." Compl. ¶¶ 70, 140, 144.  In 2018, Gordon informed Defendants that he had developed, prior to joining the firm, conditions that "affect[] his ability to perform legal work under certain conditions." *Id.* ¶¶ 70-72.  Despite these conditions, Gordon contends that he "managed to excel at work, was able to perform the essential duties of his position and received praise for his work" from Defendants. *Id.* ¶ 75.  But after learning of Gordon's conditions, Lubin "asked Gordon to submit to medical examination to confirm his disability," at which point "Gordon requested reasonable accommodations." *Id.* ¶¶ 77, 79.  Gordon then underwent testing with a clinical neuropsychologist, the results of which were provided to Defendants with Gordon's consent. *Id.* ¶¶ 80-90.  The neuropsychologist identified "six workplace accommodation deemed 'crucial' for Gordon to perform his legal work." *Id.* ¶ 90.

Gordon alleges that Defendants never provided these accommodations or demonstrated that the accommodations would pose an undue hardship. *Id.* ¶¶ 92-93.  As "Lubin's litigation and management style aggravated Gordon's disabilities that were going unaccommodated" and went against the neuropsychologist's recommendations, *id.* ¶ 100, Gordon requested that Miller remove him from Lubin's team and assign him to more appellate work in order to "boost his billable hours and perform the type of work that [the neuropsychologist] recommended as an accommodation," *id.* ¶ 102.  Miller quickly denied this request. *Id.* ¶ 105.  A few days later, Lubin arranged a call with Gordon during which Gordon was terminated, with performance issues cited. *Id.* ¶¶ 108-114.  Gordon alleges that he was never given written notice of his termination, as required by the Of Counsel Agreement. *Id.* ¶¶ 118-19; *see* Of Counsel Agreement § 3.

On June 21, 2022, Gordon filed this action bringing claims for interference with his rights under the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.*, breach of contract, and

3

disability discrimination under the New York State Human Rights Law, N.Y. Exec. L. § 296 *et seq.*, and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-107 *et seq*. Compl. ¶¶ 129-50.

Defendants filed a motion to dismiss the Complaint and compel arbitration on August 29, 2022. Dkts. 29, 30 ("Motion"), 31. Gordon opposed on October 5, 2022. Dkts. 35, 36 ("Opposition"). Defendants filed their reply on October 14, 2022. Dkts. 37 ("Reply"), 38.

## II. Petition to Compel Arbitration

### A. Legal Standards

Under the Federal Arbitration Act ("FAA"), a written agreement to arbitrate is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "The FAA embodies a national policy favoring arbitration founded upon a desire to preserve the parties' ability to agree to arbitrate, rather than litigate, their disputes." *Doctor's Assocs., Inc. v. Alemayehu*, 934 F.3d 245, 250 (2d Cir. 2019) (internal quotation marks and brackets omitted). Because the FAA "intended to place arbitration agreements upon the same footing as other contracts," arbitration remains "a creature of contract." *Id*. (internal quotation marks and brackets omitted).

Before compelling arbitration, a court must therefore perform a two-step inquiry that looks at contract law principles "governed by state rather than federal law." *Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel*, 346 F.3d 360, 365 (2d Cir. 2003).[3] At step one, the court considers whether "the parties enter[ed] into a contractually valid arbitration agreement." *Id*. At step two, the court

---

[3] The Of Counsel Agreement states that it "shall be interpreted, determined and controlled by the laws of the State of New York." Of Counsel Agreement § 10. The parties additionally assume in their briefing that New York law applies. *See* Opposition at 12; Reply at 7-8. Such "implied consent is sufficient to establish choice of law." *Alphonse Hotel Corp. v. Tran*, 828 F.3d 146, 148 (2d Cir. 2016) (internal quotation marks and ellipsis omitted); *accord Keller v. About, Inc.* No. 21 Civ. 228 (JMF), 2021 WL 1783522, at *2 n.1 (S.D.N.Y. May 5, 2021). The Court therefore analyzes the Of Counsel Agreement by applying New York Law.

begins by asking "whether a court or an arbitrator should decide if the dispute falls within the scope of the agreement to arbitrate." *Citigroup Inc. v. Sayeg*, No. 21 Civ. 10413 (JPC), 2022 WL 179203, at *5 (S.D.N.Y. Jan. 20, 2022) (internal quotation marks omitted). "[I]f the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019). But if it does not, then the court must determine whether "the parties' dispute fall[s] within the scope of the arbitration agreement." *Cap Gemini Ernst & Young, U.S., L.L.C.*, 346 F.3d at 365.

After conducting this two-step inquiry, the court then considers "whether one party to the agreement has failed, neglected or refused to arbitrate." *Beijing Shougang Mining Inv. Co. v. Mongolia*, 11 F.4th 144, 162 (2d Cir. 2021) (internal quotation marks omitted). "A party has refused to arbitrate if it commences litigation or is ordered to arbitrate the dispute by the relevant arbitral authority and fails to do so." *Id.* (internal quotation marks and brackets omitted).

## B. The Court Compels Arbitration

### 1. Whether the Parties Entered Into a Valid Arbitration Agreement

The party moving to compel arbitration has the initial burden of showing that the parties agreed to arbitrate. *Hines v. Overstock.com, Inc.*, 380 F. App'x 22, 24 (2d Cir. 2010) (citing *Almacenes Fernandez, S. A. v. Golodetz*, 148 F.2d 625, 628 (2d Cir. 1945)). While parties may "agree to arbitrate threshold questions such as whether the arbitration clause applies to a particular dispute, . . . parties may not delegate to the arbitrator the fundamental question of whether they formed the agreement to arbitrate in the first place." *Doctor's Assocs., Inc.*, 934 F.3d at 251 (citing *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299-301 (2010)). Or said a bit differently, parties can agree to arbitrate questions about a contract's enforceability and scope but *cannot* agree to arbitrate "questions concerning contract formation." *Id.* (emphasis omitted) (citing *Granite Rock Co.*, 561 U.S. at 299). Thus, "[t]o satisfy itself that such agreement exists, the court

must resolve any issue that calls into question the formation or applicability of the specific arbitration clause that a party seeks to have the court enforce." *Granite Rock Co.*, 561 U.S. at 297.

Here, the parties entered into an employment agreement, *i.e.*, the Of Counsel Agreement, on August 10, 2016.  That agreement contains a "Dispute Resolution" section which provides:

> Any claim in contract, tort or otherwise (except for claims for workers compensation, state disability insurance and unemployment insurance benefits) . . . arising out of or relating to this employment relationship . . . shall be resolved in accordance with the procedures specified below, which shall be the sole and exclusive procedures for resolution of any such claims.

Of Counsel Agreement § 10.  The agreement provides for pre-arbitration procedures, but if those fail then "[a]ny dispute arising out of or relating to this Of Counsel Agreement or the breach, termination, or validity thereof . . . *shall be settled by arbitration* in accordance with the then current AAA Rules for Arbitration of Employment Disputes by a sole arbitrator, mutually agreed upon by the parties." *Id.* (emphasis added).  The Of Counsel Agreement therefore clearly constitutes an agreement to arbitrate disputes.

Nor does Gordon dispute that he entered into the agreement.  He argues instead that the Of Counsel Agreement was invalid as unconscionable and against public policy, and otherwise should not be enforced.  Each of these arguments fails.[4]

### i. Whether the Of Counsel Agreement Is Unconscionable and Against Public Policy

In arguing that the Of Counsel Agreement is "unconscionable and against public policy," Gordon points to the provisions of the agreement that waive "any right to punitive, exemplary or treble damages," require the parties to "equally bear the fees and costs of AAA mediation and/or arbitration," and make each party "solely responsible for their own attorney's fees and related

---

[4] The Court need not address Gordon's argument that "[i]f Defendants are truly litigators that believe in the civil justice and jury system, they should waive the arbitration clause and not rely on a paid-for arbitration behind closed doors." Opposition at 11.  But suffice it to say, Defendants have made no such waiver.

costs." Opposition at 12-13 (quoting Of Counsel Agreement § 10). He contends that these provisions impermissibly restrict him from pursuing statutory remedies for attorneys' fees and costs, punitive damages, and exemplary fees while simultaneous imposing the "burdensome" fees and costs of arbitration. *Id.* at 13.

Defendants respond by "agree[ing] to waive the provision of the Agreement providing that each party shall be solely responsible for their own attorneys' fees and related costs as well as the provision waiving any right to punitive, exemplary, or treble damages." Reply at 8.[5] The Second Circuit has explicitly held that waiver of potentially unconscionable terms can preserve an arbitration agreement under New York law. *See Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 124-25 (2d Cir. 2010); *see also Keller*, 2021 WL 1783522, at *2 (determining under New York law that an arbitration agreement was not unconscionable after a waiver of the agreement's fee shifting and statute of limitations provisions and compelling arbitration).

Gordon urges the Court not to allow this waiver because "the offending terms are not severable from the Agreement." Opposition at 15. Gordon acknowledges that "the Second Circuit has said that a severability clause weighs in favor of severing unconscionable claims rather than invalidating an arbitration agreement." *Id.* at 15-16 (citing *Am. Fam. Life Assurance Co. of N.Y. v. Baker*, 848 F. App'x 11, 13 (2d Cir. 2021)); *see Am. Fam. Life Assurance Co. of N.Y.*, 848 F. App'x at 13 ("New York courts generally honor 'the state and federal policy favoring arbitration'

---

[5] While Defendants have not agreed to waive the provision requiring the parties to "equally bear the fees and costs of AAA mediation and/or arbitration," Of Counsel Agreement § 10, "[c]ourts applying New York law have refused to find that fee-splitting provisions in arbitration agreements are unenforceable where plaintiffs have not affirmatively demonstrated that the fee-splitting provisions would preclude them from pursuing their rights in the arbitral forum." *Saizhang Guan v. Uber Techs., Inc.*, 236 F. Supp. 3d 711, 732 (E.D.N.Y. 2017) (collecting cases); *see also Am. Fam. Life Assurance Co. of N.Y. v. Baker*, 778 F. App'x 24, 27 (2d Cir. 2019) (applying New York law in holding that an unconscionability claim failed where the appellants presented no evidence of financial inability to pursue arbitration). The Court addresses whether Gordon has made such a showing *infra* at section II.B.1.iii.

by 'severing the improper provision of the arbitration agreement, rather than voiding the entire agreement." (brackets omitted) (quoting *Brady v. Williams Cap. Grp., L.P.*, 878 N.Y.S.2d 693, 701 (App. Div. 2009), *aff'd as modified*, 928 N.E.2d 383 (N.Y. 2010))). But he suggests that such authorities apply only where the at-issue arbitration agreement contains an explicit severability provision and further argues that recent changes in state law compel a different conclusion. Opposition at 16.

The Court is not persuaded. In *Ragone*, the Second Circuit allowed waiver of potentially offending arbitration agreement provisions after examining the New York Court of Appeals decision in *Schreiber v. K-Sea Transportation Corp.*, 879 N.E.2d 733 (N.Y. 2007). *Ragone*, 595 F.3d at 124-25. The Second Circuit explained "even though the arbitration agreement at issue [in *Schreiber*] apparently *did not contain a severability clause*," "the Court of Appeals held that the offending provision should simply be disregarded" "rather than holding that a provision of an arbitration agreement which would preclude a party from vindicating its rights in arbitration rendered the entire agreement unenforceable." *Id.* at 124 (emphasis added). Relevant Second Circuit precedent therefore derived the rule allowing waiver from a New York Court of Appeals decision that arose in a context where a severability clause apparently was not present.

Nor is the Court persuaded by Gordon's argument that *Mercado v. Schwartz*, 174 N.YS.3d 82 (App. Div. 2022) "weighs against severability." Opposition at 16. In *Mercado*, the Second Department invalidated an entire medical treatment waiver agreement because certain provisions were unenforceable. 174 N.YS.3d at 87-90. Setting aside the fact that a decision of the Second Department cannot displace a decision of the New York Court of Appeals with respect to the interpretation of state law, the court in *Mercado* explicitly stated that the agreement it examined "is not analogous to an arbitration agreement." *Id.* at 89.

Finally, Gordon argues that New York Civil Practice Laws and Rules ("N.Y. C.P.L.R.") section 7515, which was amended effective October 11, 2019 to prohibit mandatory arbitration with respect to unlawful discrimination, "overrules *Schreiber* . . . as to arbitrating discrimination claims." Opposition at 18; *accord Charter Commc'ns, Inc. v. Garfin*, No. 20 Civ. 7049 (KPF), 2021 WL 694549, at *13 (S.D.N.Y. Feb. 23, 2021). But as Gordon acknowledges, courts have held that section 7515 is preempted by the FAA. Opposition at 18; *see Charter Commc'ns, Inc.*, 2021 WL 694549, at *14 ("[S]everal courts in this District have reached this issue, and have determined that [N.Y. C.P.L.R. section 7515] is preempted by the FAA."). *But see Doe v. 239 Park Ave. S. Assocs., LLC*, No. 21 Civ. 279 (JPC), 2022 WL 4592713, at *9 (S.D.N.Y. Sept. 30, 2022) ("Notably, the Second Circuit has yet to specifically address the question of whether the FAA preempts section 7515."). Somewhat confusingly, Gordon seems to argue that N.Y. C.P.L.R. section 7515 nonetheless renders the Of Counsel Agreement unconscionable and therefore unenforceable because the FAA only applies to "valid arbitration agreements." Opposition at 18. Because the Of Counsel Agreement is invalid (as unconscionable), he continues, the FAA does not apply to it and section 7515 can render the Of Counsel Agreement unconscionable (and invalid). *Id.* The Court need not grapple with this circular reasoning, as section 7515 came into effect after the parties entered into the Of Counsel Agreement and applies only prospectively. N.Y. C.P.L.R. § 7515(b)(i) ("Except where inconsistent with federal law, no written contract, entered into on or after the effective date of this section shall contain a prohibited clause."); *see also Newton v. LVMH Moet Hennessy Louis Vuitton Inc.*, 140 N.Y.S.3d 699, 700 (App. Div. 2021) ("The provisions of CPLR 7515 relied on by plaintiff are not retroactively applicable to arbitration agreements, like the one at issue, that were entered into preceding the enactment of the law in 2018, so that plaintiff's argument that this law prohibits arbitration of her claims is unavailing.").

9

### ii. Whether "Equitable Estoppel" and Contract Law Prevents the Court from Compelling Arbitration

Invoking what he describes as "the doctrine of equitable estoppel and black-letter contract law," Gordon argues that Defendants breached the Of Counsel Agreement by failing to provide written notice of his termination, and that this breach "waives and estops any enforcement of the arbitration clause against Gordon." Opposition at 9-10. This argument also fails. Based on the arguments in his opposition brief, Gordon seems to be accusing Defendants of material breach of contract. "A fundamental principle of contract law provides that the material breach of a contract by one party discharges the contractual obligations of the non-breaching party." *Drapkin v. Mafco Consol. Grp., Inc.*, 818 F. Supp. 2d 678, 686 (S.D.N.Y. 2011) (internal quotation marks omitted). But the question of whether a party breached an employment agreement is the exact sort of question that would be referred to an arbitrator when a valid arbitration clause exists in the contract. It would make little sense if the court had to assess the merits of a contractual dispute to determine whether to compel the parties to address that very dispute before an arbitrator whenever a party who had agreed to arbitration alleged material breach. *See Convergen Energy LLC v. Brooks*, No. 20 Civ. 3746 (LJL), 2020 WL 5549039, at *13 (S.D.N.Y. Sept. 16, 2020) (questions of "enforceability or applicability of an arbitration agreement" may be delegated to the arbitrator (internal quotation marks omitted)).

### iii. Whether the "Effective Vindication" Doctrine Applies

Gordon also argues that the Court should not enforce the Of Counsel Agreement because he "cannot effectively vindicate his civil rights because the Agreement requires him to split the cost of the AAA arbitrator with Defendants." Opposition at 10. He argues that the "effective vindication exception to arbitration applies in situations that create a 'prospective waiver of a party's right to pursue statutory remedies.'" *Id.* (quoting *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 236 (2013)). "It is well established, however, that 'a party seeking to invalidate an

10

arbitration agreement on the ground that arbitration would be prohibitively expensive bears the burden of showing the likelihood of incurring such costs . . . .'" *Zambrano v. Strategic Delivery Sols., LLC*, No. 15 Civ. 8410 (ER), 2016 WL 5339552, at *7 (S.D.N.Y. Sept. 22, 2016) (quoting *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 92 (2000)).  And it is further "well established that the 'mere risk of prohibitive costs is too speculative to justify invalidating an arbitration clause.'" *Reynolds v. de Silva*, No. 09 Civ. 9218 (CM), 2010 WL 743510, at *6 (S.D.N.Y. Feb. 24, 2010) (quoting *Barbieri v. K-Sea Transp. Corp.*, 556 F. Supp. 2d 187, 194-95 (E.D.N.Y. 2008)), *abrogated on other grounds by Katz v. Cellco P'ship*, 794 F.3d 341 (2d Cir. 2015).  Without any showing by Gordon as to the likelihood of him incurring prohibitively expensive costs at arbitration, the Court will not invalidate the Of Counsel Agreement on the basis of prohibitive expense.

*  *  *

Thus, the Court determines that the arbitration agreement in the Of Counsel Agreement is valid, and each of Gordon's arguments attacking its validity lacks merit.  The Court therefore turns to whether the parties delegated the question of arbitrability to the arbitrator.

**2. Whether the Parties Delegated the Question of Arbitrability to the Arbitrator**

"Courts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (internal quotation marks and brackets omitted).  To show "clear and unmistakable evidence of the parties' intent to delegate arbitrability to an arbitrator," parties may point to provisions of an arbitration agreement "explicitly incorporat[ing] procedural rules that empower an arbitrator to decide issues of arbitrability." *DDK Hotels, LLC v. Williams-Sonoma, Inc.*, 6 F.4th 308, 318 (2d Cir. 2021) (internal quotation marks omitted); *Contec Corp. v. Remote Sol., Co., Ltd.*, 398 F.3d 205, 208 n.1 (2d Cir. 2005) (applying this principle in construing an agreement subject

11

to New York law). "Because the AAA Commercial Arbitration Rules . . . explicitly empower an arbitrator to resolve questions of arbitrability," the Second Circuit "ha[s] found incorporation of these rules into an arbitration agreement to be relevant in evaluating whether there is clear and unmistakable evidence of the parties' intent to delegate the question of arbitrability to the arbitrator." *DDK Hotels, LLC*, 6 F.4th at 318.

But incorporating procedural rules does not *per se* show the intent to delegate the question of arbitrability. Instead, "context matters." *Id.* So when an "arbitration agreement is broad and expresses the intent to arbitrate all aspects of all disputes, this—coupled with incorporation of rules that expressly empower an arbitrator to decide issues of arbitrability—constitutes clear and unmistakable evidence of the parties' intent to delegate the question of arbitrability to the arbitrator." *Id.* at 318-19. By contrast, when "the arbitration agreement is narrower, vague, or contains exclusionary language suggesting that the parties consented to arbitrate only a limited subset of disputes, incorporation of rules that empower an arbitrator to decide issues of arbitrability, standing alone, does not suffice to establish the requisite clear and unmistakable inference of intent to arbitrate arbitrability." *Id.* at 319. In other words, when "there is a qualifying provision (whether described as a carve-out or carve-in) that arguably excludes the present dispute from the scope of the arbitration agreement, that provision creates ambiguity regarding the parties' intent to delegate arbitrability to the arbitrator." *Id.* at 322. This ambiguity then "delays application of AAA rules until a decision is made as to whether a question does or does not fall within the intended scope of arbitration, in short, until arbitrability is decided." *NASDAQ OMX Grp., Inc. v. UBS Secs., LLC*, 770 F.3d 1010, 1032 (2d Cir. 2014).

Section 10 of the Of Counsel Agreement states that disputes "shall be settled by arbitration *in accordance with the then current AAA Rules for Arbitration of Employment Disputes* by a sole arbitrator." Of Counsel Agreement § 10 (emphasis added). It additionally contains broad language

12

that the parties consented to arbitrate "[a]ny claim in contract, tort, or otherwise" with only narrow exceptions for "workers compensation, state disability insurance and unemployment insurance benefits." *Id*. This narrow exception in no way "arguably excludes" the present dispute for violation of the Family and Medical Leave Act, disability discrimination, and breach of contract. The Court therefore determines that the Of Counsel Agreement contains clear and unmistakable evidence of the parties' intent to delegate the question of arbitrability to the arbitrator.

Gordon presents a number of arguments for why this Court should decide the question of arbitrability. Each is without merit.

First, he argues that Defendants have waived the issue because they have inadequately briefed it. Opposition at 12. Gordon claims that Defendants "[i]n passing" state that issues of arbitrability should be decided by an arbitrator and that their "lack of argument or explanation on this point acts as a waiver of the argument." Opposition at 12. Putting aside that Gordon cites an inapposite case in support of this argument, *see id.* (citing *Doe v. Trump Corp.*, 6 F.4th 400, 410 (2d Cir. 2021) (addressing the standard for preserving arguments on appeal, not in district court briefing)), Defendants explicitly argued that the parties' incorporation of the AAA rules "serves as clear and unmistakable evidence" that "any dispute as to the question of arbitrability itself is to be resolved by arbitration as well." Motion at 9. Defendants cited four cases, two in this District and two in the Second Circuit, in support of that argument. *Id.* They clearly have not waived it.

Gordon also tries to attack the sufficiency of the Of Counsel Agreement's incorporation of the AAA rules. He correctly observes that "the Agreement contains no express delegation clause directly stating that the arbitrator decides threshold issues." Opposition at 5. But, as discussed, such a clause is not required to evince the parties' intent to delegate the question of arbitrability to the arbitrator. Instead, a broad arbitration agreement that incorporates the AAA rules, which explicitly empower an arbitrator to decide arbitrability, can be clear and unmistakable evidence of

13

the parties' intent to arbitrate arbitrability. *See DDK Hotels*, 6 F.4th at 318-19. The Of Counsel Agreement is exactly such a document.

Gordon argues that the carve-out to arbitration in the Of Counsel Agreement for "claims for workers compensation, state disability insurance and unemployment insurance benefits" creates "ambiguity of who decides arbitrability." Opposition at 6. But as discussed, these exceptions are exceedingly clear and narrow, with none applying to the allegations in this case of breach of the Family and Medical Leave Act, breach of contract, and disability discrimination. In *Wells Fargo Advisors, LLC v. Sappington*, 884 F.3d 392, 396 (2d Cir. 2018), the Second Circuit, applying Missouri law, determined that a clause subjecting to arbitration "any controversy or dispute" with the exception of "disputes that relate to unemployment insurance and employee benefits" demonstrated the parties' clear and unmistakable intent to arbitrate all questions of arbitrability. Applying the principle of *expressio unius est exclusio alterius*, the court determined that the specific exclusions "reinforce our view that the parties intended to let an arbitrator decide whether class claims are arbitrable. By expressly foreclosing proceedings from arbitration, the parties in these cases strongly implied that every other 'controversy or dispute' remains subject to arbitral resolution." *Id.* As that principle of contract interpretation applies equally to New York and Missouri contracts, *see, e.g.*, *KLS Diversified Master Fund, L.P. v. McDevitt*, 507 F. Supp. 3d 508, 542 (S.D.N.Y. 2020) (applying the principle of *expressio unius est exclusio alterius* to a New York contract), *aff'd*, No. 21-1263, 2022 WL 2759055 (2d Cir. July 13, 2022), the Court reaches the same conclusion that the Second Circuit did in *Wells Fargo Advisors*: the narrow exclusions to arbitration in the Of Counsel Agreement reflect that all the arbitrator is to decide arbitrability as to all other disputes.

Gordon also argues that the Of Counsel Agreement does not "unambiguously incorporate by reference the AAA as binding on mediation or arbitration," because the agreement states that

14

if informal negotiations fail "the parties *shall endeavor* to settle the dispute by mediation under the then current AAA Procedure for Mediation of Employment Disputes."  Opposition at 6; *see* Of Counsel Agreement § 10.  Gordon argues that the "shall endeavor" language "suggests that using the AAA is optional."  Opposition at 6.  The Court disagrees.  The Of Counsel Agreement also states, however, that "any dispute arising out of or relating to" the agreement "which has not been resolved by the mediation procedure" "*shall be settled by arbitration* in accordance with the then current AAA Rules for Arbitration of Employment Disputes by a sole arbitrator."  Of Counsel Agreement § 10 (emphasis added).  The "shall endeavor" language in the mediation clause, read in conjunction with the subsequent arbitration language, indicates an appreciation that mediation may not successfully reach a resolution, with arbitration required to follow any failed mediation and to be conducted pursuant to the AAA rules.

      Gordon next argues that certain provisions in the Of Counsel Agreement stand at odds with AAA rules, thus creating ambiguity as to whether those rules were incorporated.  Opposition at 7.  Specifically, he points to the provision of the Of Counsel Agreement that "the arbitrator should not be empowered to reinstate a former partner," *id.*, which he contends "contradicts the AAA rules that empower an arbitrator 'to grant any remedy or relief that would have been available' to the parties in court," *id.* (quoting Dkt. 35-2 § 39(d)).  Gordon, however, provides no convincing argument for why the parties' decision to agree to an exception to a particular AAA rule concerning the arbitrator's power to grant certain relief creates ambiguity as to whether any of the non-excepted rules are incorporated.  Nor does this Court find that this limited exception creates any ambiguity.

      Finally, Gordon argues that provisions of the Of Counsel Agreement requiring that disputes go first through informal negotiation and second through mediation before arbitration "create[] more ambiguity and strongly suggest that the arbitrator was not agreed by the parties to be the sole

15

decision maker," citing the Second Circuit's decision in *DDK Hotels*. *Id.* He adds as well that negotiation and mediation are conditions precedent to arbitration, which render the Court unable to order arbitration as Defendants have not satisfied these conditions.[6] *Id.* at 8. Gordon's reliance on *DDK Hotels* is misplaced. There, the Second Circuit determined that an agreement was ambiguous as to who should decide issues of arbitrability because it listed only a narrow set of "Disputed Matters" as subject to arbitration. *DDK Hotels*, 6 F.4th at 320-21. The narrowness of this set "create[ed] ambiguity as to the parties' intent to delegate arbitrability to the arbitrator" and counseled against incorporation of the AAA rules. *Id.* The Second Circuit in *DDK Hotels* did not rely at all on the parties' agreement to mediation prior to arbitration in reaching its decision, *id.*, and that decision in no way calls into question caselaw in this District holding that requiring mediation prior to arbitration does not undermine the parties' intent to delegate issues of arbitrability to the arbitrator. *See Pacelli v. Augustus Intel., Inc.*, 459 F. Supp. 3d 597, 608 (S.D.N.Y. 2020) (concluding that a requirement that the parties engage in mediation prior to arbitration did not render evidence of the parties' intent to delegate issues of arbitrability to the arbitrator unclear or mistakeable); *Katsoris v. WME IMG, LLC*, 237 F. Supp. 3d 92, 97 (S.D.N.Y. 2017) (same).

Nor would any failure by Defendants to engage in informal negotiations or mediation prevent them from compelling arbitration where the question of arbitration is referred to the arbitrator. "[C]ourts presume that the parties intend arbitrators, not courts, to decide disputes about the meaning and application of particular procedural preconditions for the use of arbitration." *BG Grp. PLC v. Republic of Arg.*, 572 U.S. 25, 34-35 (2014). Courts in this District similarly have determined that a failure by a party to engage in pre-arbitration mediation "is a question of

---

[6] Gordon further argues that Defendants failed to send a "Notice of Intention to Arbitrate" to his home, as the Of Counsel Agreement requires, rendering the notice void. Opposition at 9. Defendants have since cured any failure by sending such a notice to Gordon's home. Dkt. 38-1.

16

procedural arbitrability and thus must be determined by an arbitrator." *Morelli v. Alters*, No. 19 Civ. 10707 (GHW), 2020 WL 1285513, at *10 (S.D.N.Y. 2020); *see also Pacelli*, 459 F. Supp. 3d at 610. Therefore, the informal negotiation and mediation provisions of the Of Counsel Agreement neither create ambiguity about the delegation of questions of arbitrability to the arbitrator nor create questions to be resolved by the Court prior to compelling arbitration. Rather, any argument that the preconditions to arbitration have not been met must be resolved by the arbitrator.

The Court thus concludes that the Of Counsel Agreement delegates questions of arbitrability to the arbitrator.

### 3. Whether Gordon Has Refused to Arbitrate

Lastly, the Court considers whether Gordon has refused to arbitrate. "A party has refused to arbitrate if it commences litigation or is ordered to arbitrate the dispute by the relevant arbitral authority and fails to do so." *Beijing Shougang Mining Inv. Co.*, 11 F.4th at 162 (internal quotation marks and brackets omitted). Gordon has commenced this litigation and therefore has refused to arbitrate.

\* \* \*

Because each requirement has been satisfied, the Court grants the motion to compel and orders Gordon to participate in arbitration.

### III. Stay Pending Arbitration

Because the Court grants the motion to compel arbitration, it must next determine whether to dismiss or stay this case. Defendants ask that the Court dismiss the case. Dkt. 30 at 11. Gordon expresses no preference for a stay or dismissal in the event arbitration is compelled. "[W]hen all of the claims in an action have been referred to arbitration and a stay requested," the FAA "mandate[s] a stay of proceedings." *Katz*, 794 F.3d at 347. When no stay is requested, the "court has the discretion to dismiss the case or issue a stay." *Lewis v. ANSYS, Inc.*, No. 19 Civ. 10427

(AJN), 2021 WL 1199072, at *9 (S.D.N.Y. Mar. 30, 2021).  The Second Circuit has "counsel[ed] that courts should stay litigation pending arbitration to avoid converting an otherwise-unappealable interlocutory stay order into an appealable final dismissal order, thus enabling parties to proceed to arbitration directly."  *Dylan 140 LLC v. Figueroa*, 982 F.3d 851, 858 n.2 (2d Cir. 2020) (internal quotation marks and brackets omitted).  The Court exercises its discretion to stay the case for all Defendants.

## IV. Conclusion

For the reasons discussed above, the Court grants Defendants' motion to compel arbitration and orders Gordon to participate in arbitration.  This case is stayed pending the outcome of that arbitration.  The parties shall submit a status letter to the Court within fourteen days of the final judgment of the arbitrator.  The Clerk of Court is respectfully directed to close the motion pending at Docket Number 29 and to stay the case.

SO ORDERED.

Dated: February 21, 2023
New York, New York

JOHN P. CRONAN
United States District Judge